25 C.C.P.A.(Patents)

**HOZA v. COLBY.**
**Patent Appeals No. 3988.**

Court of Customs and Patent Appeals.
June 6, 1938.

Bartlett, Eyre, Scott & Keel and Lucius B. Weymouth, all of New York City (Lee B. Kemon, of Washington, .D. C., and Richard Eyre, of New York City, of counsel), for appellant.

Harry B. Rook, of Newark, N. J., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention to the senior party Colby in four counts of an interference. Hoza's application was filed February 20, 1933. Colby's application, serial No. 656,355, was filed February 11, 1933, and is a division of his parent application, serial No. 473,-730, filed August 7, 1930.

Four counts are involved of which counts 1 and 4 are sufficiently illustrative and read:

"1. A pertused metal sheet comprising a thin flexible sheet of ductile metal of a thickness of the order of foil having a plurality of rectangular faced pertusions of a number of the order of at least several hundred per square inch and so spaced that the aggregate face areas of said pertusions is substantially greater than the aggregate face areas of the portions of the sheet between the pertusions,. each pertusion having a wall at each side thereof projecting integrally and angularly from one side of the sheet.

"4. An electrode for electronic tubes comprising a sheet of metal of a thickness of the order of foil having pertusions of a number of the order of several hundred per square inch and each pertusion having side walls formed of the metal displaced to form the pertusions projecting integrally and angularly from one side of the sheet, the other side of the sheet being substantially smooth."

The subject matter of counts 1 and 2 relates to a pertused metal sheet. This sheet is described in the decision of the Examiner of Interferences as follows:

" * * * More particularly, the subject matter relates to a thin metal sheet of ductile material of a thickness of the order of foil. Rectangular pertusions of the order of several hundred per square inch are struck from the face of the foil and the aggregate face areas of the pertusions

is greater than the aggregate area of the portions between the pertusions. Each pertusion has a wall at each side thereof projecting integrally and angularly from the side of the sheet. * * '*"

Counts 3 and 4 are drawn to cover an electrode for electronic tubes made from the metal above described.

Prior to the invention involved in this appeal, wire mesh or a solid sheet of metal were used for making the anode or plate of a radio tube. Certain objections to the use of these materials were overcome, one of which was the difficulty in removing the heat from the electrode. Hoza conceived the notion of using in a radio tube a thin metal strip with apertures to take the place of the solid metal or woven wire.

In 1928, while Hoza was experimenting with perforated strips, he had the Edison Storage Battery Company make for him certain perforated strips on their standard rollers. These perforated strips were pertused, that is to say, the strips had been punctured without removal of any portion of the metal. There were not as many holes in these strips per square inch as were in other strips, used later, but they or pieces cut from them were introduced into the record as Exhibit 1 and respond to the terms of counts 1 and 2. This was long before Colby entered the field.

Hoza obtained a patent, 1,975,721, dated October 2, 1934, on an application filed July 26, 1929, for a radio tube having a clean-cut perforated anode or plate to be used in place of the theretofore known solid sheet anode or wire mesh anode.

The testimony is summed up so succinctly and accurately by the board that we will quote at some length from its decision. The quotation also embraces certain comments and holdings by the board relating to said testimony. It is as follows:

"As corroborative of the making of these pertused sheets as disclosed in Exhibit 1, the witnesses Bash and Allen, among others, have been produced. Bash identified the three sheets of perforated sheet metal, constituting Hoza Exhibit 1, as of the same character as those he had seen about the first of December, 1928 in Mr. Hoza's office, which he said were to be used in place of nickel wire mesh in radio tubes. The witness Allen states, in substance, beginning with Q. 19, that he

recognized the three specimens of perforated metal strips, constituting Hoza Exhibit 1, as like materials that he had seen for the first time in the early part of 1929 when Mr. Bash of the Driver-Harris Company handed him several feet as a sample. Allen testified that he made up several tubes, probably not more than 12, from this material, that all characteristics were read on the tubes in the laboratory and several placed on life tests. Asked in Q. 30 what was the result of the life test on receiving tubes having their shields made of material like Hoza Exhibit 1, he stated that they compared favorably with the regular product. Allen stated, in answer to Q. 63 in substance, that two of the tubes which he had made up of this material like Exhibit 1 were taken home for trial in his own radio receiving set, that he actually used those tubes in his set and that they were quite satisfactory.

"Hoza appeared to be anxious, according to the testimony, to introduce this material into use and had Mr. Bash present it to various organizations making tubes, but there seemed to have developed some difficulty about the projecting portions on the plates. Bash stated in his testimony that shortly after first discussing the matter with Hoza he went to the Westinghouse Lamp Company and that Mr. Donovan of the lamp company felt that the material could not readily be handled in their forming dies as he thought it was too thick and that the dies might close up the holes. Bash stated that he took up the matter with Hoza and that as a result Hoza suggested that he could perforate the strip in another manner with so-called clean-cut perforations with no appreciable burr on the side. Bash stated that Hoza made these clean-cut perforated strips, as illustrated in his Exhibit 5 and, according to the testimony, it appears obvious that these clean-cut strips were put into use for making tubes and Hoza secured a patent, No. 1,975,721, for this clean-cut perforated strip for use in radio tubes.

"The testimony appears to us to sufficiently corroborate this course of procedure and development on the part of Hoza at the times indicated, but Hoza apparently laid aside his sheet with the burrs and there is no indication he did anything with it prior to 1932. On page 25 of Hoza's brief it is stated in substance, that the clean-cut perforated strip, according to Exhibit 5, while more expensive to

manufacture than the pertused strip was easier to fabricate into electrodes and that they adopted that material in 1929 when the DeForest Company was operating at capacity, but that when business fell off during the depression and the tube manufacturers wanted cheaper material, some of the manufacturers adopted the pertused material in place of that of Exhibit 5.
* * *

"It is the examiner's conclusion that the use of pertused material in making a small number of tubes in February, 1929 by Hoza was no more than an abandoned experiment. He points out that Hoza did nothing further with the material corresponding to the counts of the interference for a period of approximately three and one-half years and that during this period another form was adopted and an application for a patent filed.

"Among the decisions referred to by the examiner, is the case of Browne v. Ludlow, C.D.1870, page 16. In this case it was pointed out by the Commissioner of Patents that as between two independent inventors, he who first perfects the invention is entitled to the patent, and it cannot avail the other to go back to crude experiments falling short of the complete invention, especially when such experiments resulted at the time in the adoption of another device and in throwing aside a form more nearly approaching the one in controversy.

"It is considered significant that Hoza, after producing his pertused sheet form and after some objections to it in radio tubes, laid aside the form more nearly approaching the one here in contest and adopted the clean-cut perforated strip in its stead. The fact that Mr. Hart, who was the contact man for Hoza with the patent attorney did not consider it necessary to go to the expense of filing a separate application on electrodes made of material like Exhibit 1 and in view of the further fact that nothing was done about filing an application until they were notified of infringement of counts 1 and 2 by their use of this material, we are constrained to hold that Hoza's action in discarding the pertused form like Exhibit 1 for a different form and his long delay in filing an application until stirred into action by another party in the field does not entitle him to prevail against one who has in the interim developed and brought to fruition the form of device which had been discarded by the party Hoza."

As above indicated, the record clearly shows that after the material responding to counts 1 and 2 was produced, Hoza's experiments and the experiments he and his associates caused others to make in using the pertused metal in radio tubes were not regarded as successful. The record clearly shows that the metal, as such, had other well-known uses prior to these experiments for such purposes as catalyzer screens and in storage batteries.

As we understand the position of appellant, it is that as to all the counts involved he had completely perfected his invention prior to the entrance of Colby into the field; that as to counts 3 and 4 the record shows that at least twelve tubes were made by Victor O. Allen, Assistant Chief Engineer of the DeForest Radio Company, and tested; that the tests showed these tubes to compare favorably with the regular product and that Allen himself used two of the tubes in his home radio quite satisfactorily.

Allen B. DuMont, Chief Engineer of the DeForest Radio Company, and John S. Byrne, a radio tube engineer for that company, also testified on the question of Allen's having made and tested the said tubes. DuMont stated in substance that he saw the tubes, constructed from material like Exhibit 1, which Allen had made and that he saw them given "life tests"; that these tests were given to determine defects in the tubes and that these tests were satisfactory.

Byrne stated that he saw the tubes but did not see the pertused metal of the tubes before it was placed in the tubes, but from his examination of it, in the tube, he was of the opinion that it was pertused metal like Exhibit 1 and that he did not see any tests made of the tubes.

Within two weeks of the time the metal like Exhibit 1 was submitted to Allen, metal like Exhibit 5 with clean-cut perforations was submitted for experimentation and nothing further was done with the pertused material.

Hoza was not a radio tube manufacturer and it appears definitely in the record that those engaged in the manufacture of such tubes, who at his request attempted to use the pertused material, found serious objection to the same; that material like Hoza's Exhibit 5, which had clean-cut per-

forations, was used instead; that commercial production was based upon the latter and that Hoza, after experimenting with the pertused metal, applied for and secured the patent above referred to for a radio tube which utilized the clean-cut perforated material.

As found by the tribunals below, nothing further was done by Hoza with the pertused material until June 1932, approximately three and a half years after his alleged reduction to practice and after he had been notified by Colby's assignee that the pertused material which he then was making and offering for sale was covered by allowed claims in the Colby application.

■ Upon the foregoing facts the tribunals below have concurred in holding that as to all the counts Hoza's activities amounted to nothing more than an abandoned experiment and that it could not be held that he had completed his invention. We are in agreement with the conclusion reached by the tribunals as to counts 3 and 4. Unquestionably the record shows that as between the two parties to this interference Colby was the first inventor of a radio tube utilizing the pertused metal in controversy.

None of the tubes constructed for Hoza by Allen or any record relating to the tests were introduced in evidence. The weakness of the testimony as to the construction and tests of the tubes, together with the subsequent happenings, confirm the view that whatever experiments were made with pertused material were not regarded by Hoza and his associates as proving the utility and practicability of using the said pertused material in radio tubes, and that Hoza's said activities were properly regarded by the tribunals as amounting to nothing more than an abandoned experiment.

■ As to counts 1 and 2, which call for nothing more than a pertused metal sheet, we find ourselves in disagreement with the conclusion reached by the tribunals below. Colby's earliest alleged date is July 9, 1929. Hoza had the metal responding to the counts constructed for him by another long before this date—in December 1928. Whether he was the inventor of it as between himself and a third party is not a matter of concern here. Certainly Colby cannot assert his prior possession of the invention as to the metal in the face of the fact that his adversary in this proceeding had possession of the same long before Colby entered the field. Colby argues, and the board found, that Hoza's activities in connection with the metal amounted only to an abandoned experiment; that, therefore, it must be held as to counts 1 and 2 that there was no reduction to practice and that the abandoned experiment doctrine applies to these counts as well as to counts 3 and 4. It must be remembered that counts 1 and 2 are drawn broadly to a pertused metal sheet which admittedly has several uses and that reduction to practice of the invention of the metal sheets does not require a successful production of a radio tube from the metal. The mere fact that Hoza did not utilize pertused metal for any other purpose than the making of a radio tube would be no justification for holding that if he was the inventor of the metal he had abandoned the invention involved in the same. The so-called doctrine of abandoned experiment does not apply where there has been a reduction to practice. Brogden et al. v. Henry, 69 F.2d 978, 21 C.C.P.A., Patents, 1043; Altorfer & Dehle v. Haag, 74 F.2d 129, 22 C.C.P.A., Patents, 806. There being no concealment, the doctrine akin to equitable estoppel announced in Mason v. Hepburn, 13 App.D.C. 86, and in many other decisions, does not apply.

■ Nothing said in this decision is to be taken as suggesting that any of the counts are patentable to anyone. Priority is the only question here involved, and, under our well-defined jurisdiction, we are confined, upon the instant record, to this question as between the parties to this proceeding.

We hold that the board was in error in affirming the Examiner of Interference's award of priority to the senior party as to counts 1 and 2, which should have been awarded to the junior party Hoza. The decision of the Board of Appeals is reversed as to counts 1 and 2, and affirmed as to counts 3 and 4.